IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUZANNE LOUGHLIN, HARRY RHULEN, and JAMES SATTERFIELD, | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. 1:20-cv-01055-LPS |
| v. | ) ) ) |
| CHRISTINE HARADA, DAVID HANLON, STEVEN D. CROXTON, EYAL HEN, and ROBERT A. BERMAN, | ) JURY OF 12 DEMANDED ) ) ) |
| Defendant. | ) |

## AMENDED COMPLAINT[1]

Plaintiffs Suzanne Loughlin ("Suzy Loughlin"), Harry Rhulen ("Harry Rhulen") and James Satterfield ("Jim Satterfield") (collectively, "Plaintiffs"), by and through their attorneys, hereby request a jury of 12 to try all claims set forth herein, amend their Complaint in accordance with Federal Rule of Civil Procedure 15(a)(1)(B), and allege as follows:

Nature of the Action

1.  This is an action for damages caused by defendants Christine Harada's ("Harada"), David Hanlon's ("Hanlon"), Steven D. Croxton's ("Croxton"), Eyal Hen's ("Hen") and Robert A. Berman's ("Berman") misconduct while serving as directors, or officers, or both, of Rekor Systems, Inc. ("Rekor"), that is, betraying their fiduciary duty to Rekor and to each of the Plaintiffs and, instead, supporting and furthering Rekor's campaign of retaliation against the Plaintiffs in order to appease the personal interests of Berman, the Executive Chairman, Chief Executive Officer, President, and a controlling shareholder of Rekor.

---

[1] A redline showing the amendments to the Complaint is attached hereto as Exhibit A.

Parties

2. Plaintiff Suzy Loughlin is a citizen of the State of New York.

3. Plaintiff Harry Rhulen is a citizen of the State of Colorado. Harry Rhulen and Suzy Loughlin are siblings.

4. Plaintiff Jim Satterfield is a citizen of the State of Georgia.

5. At all times relevant herein, subsequent to January 25, 2017, each of the Plaintiffs was a shareholder of Rekor.

6. Upon information and belief, Harada is a citizen of the State of California and a member of the Board of Directors of Rekor (the "Board").

7. Upon information and belief, Hanlon is a citizen of the State of Nevada and a member of the Board.

8. Upon information and belief, Croxton is a citizen of the State of Louisiana and a member of the Board.

9. Upon information and belief, Hen is a citizen of Maryland and is, and at all relevant times was, the Chief Financial Officer of Rekor.

10. Upon information and belief, Berman is a citizen of Maryland, the Executive Chairman of the Board, and the President and Chief Executive Officer of Rekor.

Jurisdiction

11. This Court has subject matter jurisdiction over this controversy in accordance with 28 U.S.C. § 1332 because each plaintiff is diverse from each defendant and the amount in controversy exceeds $75,000.

12. This Court can exercise personal jurisdiction over each of the Defendants pursuant to 10 Del. C. § 3114 because each defendant is or was at all relevant times an officer and/or director of Rekor.

## Background

13. Rekor is a Delaware corporation with its principal place of business in Maryland. Rekor's Delaware registered agent identified with the Delaware Secretary of State is The Corporation Trust Company, 1209 N. Orange Street, Wilmington, Delaware 19801. Rekor has changed its name several times in the past few years. Rekor refers to Rekor Systems, Inc., together with its predecessors and subsidiaries, under its current name and all previous names. Upon information and belief, Rekor is licensed to do business in New York and does business in New York.

14. Upon information and belief, Berman is, and at all relevant times was, Rekor's largest Shareholder and a member of the Board. As a result, Berman is a controlling shareholder of Rekor. Because of his status as a controlling shareholder, Rekor has identified Berman as not an independent director along with James K. McCarthy and Richard Nathan, who, at all relevant time, collectively made up the controlling block of Rekor shareholders.

15. Upon information and belief, a majority of the Board of Directors of Rekor (the "Board") was nominated for their positions on the Board as a result of their relationships with Berman, either business, or personal, or both.

16. Upon information and belief, Berman dominates the functioning of and the decisions of the Board.

17. Upon information and belief, since 2017 Harada has served continuously on the Board.

18. Upon information and belief, Harada is Chair of the Rekor Corporate Governance Committee, a member of the Rekor Audit Committee, a member of the Rekor Compensation Committee, and a member of a Board Special Committee (the "Special Committee") whose function is to coordinate Rekor's dispute with the Plaintiffs.

19. Upon information and belief, Hanlon is a long-time friend and colleague of Berman.

20. Upon information and belief, in 2018, Berman recruited Hanlon to be on the Board.

21. Upon information and belief, since 2018 Hanlon has served continuously on the Board.

22. Upon information and belief, Hanlon is a member of the Rekor Corporate Governance Committee, a member of the Rekor Compensation Committee, and a member of the Special Committee.

23. Upon information and belief, since 2019 Croxton has served continuously on the Board.

24. Upon information and belief, Croxton is a member of the Rekor Audit Committee and a member of the Rekor Compensation Committee.

25. On August 7, 2019, the Rekor annual meeting was held in New York City (the "2019 Annual Meeting").

26. Upon information and belief, Harada, Hanlon, and Berman attended the 2019 Annual Meeting in person.

27. At the 2019 Annual Meeting, Harada, Hanlon, Croxton, and Berman were elected to the Board.

28. Upon information and belief, Hen attended the 2019 Annual Meeting in person. Although Hen was not elected to Rekor's Board, Hen remained an officer of Rekor after its 2019 Annual Meeting.

29. Plaintiffs became shareholders of Rekor through Rekor's purchase of Plaintiffs' company. In 2016, Plaintiffs were the majority owners of two entities called Firestorm Solutions LLC and Firestorm Franchising LLC (jointly, "Firestorm"). That year, Berman approached Plaintiffs to propose that Rekor acquire Firestorm.

30. On January 25, 2017, Rekor acquired Firestorm and that acquisition (the "Acquisition") was memorialized in a Membership Interest Purchase Agreement, dated January 25, 2017 (the "Purchase Agreement"). The Purchase Agreement provides that it is to be governed by the law of the State of New York.

31. As a result of the Acquisition, Firestorm became a wholly-owned subsidiary of Rekor.

32. Pursuant to the Purchase Agreement, each Plaintiff was to be compensated for his or her interests in Firestorm in four different ways: by a cash payment, by Rekor shares, by warrants for Rekor shares (the "Warrants"), and by promissory notes (the "Promissory Notes"). Attached hereto as Exhibits 1, 2, 3, 4, 5 and 6, respectively, are the $5.00 and $7.00 Warrants for each Plaintiff. Accordingly, at all relevant times after January 2017, each Plaintiff was a shareholder of Rekor.

33. Pursuant to the Purchase Agreement, on January 25, 2017, each Plaintiff entered into an employment agreement with Rekor or a sub-subsidiary of Rekor (the "Employment Agreements").

34. Pursuant to their respective Employment Agreements, Harry Rhulen served as President of Rekor, Suzy Loughlin served as General Counsel and Chief Administrative Officer of Rekor, and Jim Satterfield continued to serve as President and Chief Executive Officer of Firestorm.  The Employment Agreements of each Plaintiff provides that it is to be governed by the law of the State of New York.

The Retaliation Campaign Against The Plaintiffs

35. In June 2018, Harry Rhulen made a whistleblower complaint to the Governance Committee of the Board, which was then chaired by Harada (the "Whistleblower Complaint"). The Whistleblower Complaint made specific allegations against Berman and certain actions and/or inactions by him.  After receiving the Whistleblower Complaint, the Governance Committee did an investigation and sealed its report to keep it private.

36. In his various communications, Harry Rhulen raised concerns about Berman's failure of leadership and lack of skills to manage a public corporation, which concerns had been articulated by the Presidents of the Rekor operating companies, by Riaz Latifullah, an Executive Vice President of Rekor, and by Rekor's then-Board Chair, James McCarthy.  Mr. Rhulen's concerns were set forth in emails to Christine Harada, the Chair of the Rekor Governance Committee.  Attached hereto as Exhibit 7 are Mr. Rhulen's emails to Ms. Harada, dated August 13, 2018, and September 2, 2018.

37. After receiving the Whistleblower Complaint, the Governance Committee did an investigation and sealed its report.  In an email of September 21, 2018, Ms. Harada not only discussed that the report concerning Berman would be sealed, but that Mr. Rhulen had been "assigned responsibility to concentrate on Firestorm matters . . ." unless Mr. Berman "specifically

requests that you do otherwise." Attached hereto as Exhibit 8 is Ms. Harada's September 21, 2018 email to Mr. Rhulen and his response.

38. After Harry Rhulen made his Whistleblower Complaint, Berman decided to punish Harry Rhulen as well as Suzy Loughlin and Jim Satterfield by a campaign of retaliation (the "Retaliation Campaign"). Although Suzy Loughlin and Jim Safferfield did not lodge the Whistleblower Complaint, upon information and belief, Berman believed that they were aligned with Harry Rhulen given their collectively histories at Firestorm. Thus, Berman knew that in order for his Retaliation Campaign to be successful, he needed to retaliate against not only Harry Rhulen, but Suzy Loughlin and Jim Satterfield as well.

39. Berman and the Board, including Harada, Hanlon, and Croxton as alleged more particularly herein, used Rekor's corporate assets for Berman's personal agenda to effectuate the Retaliation Campaign. Rekor was used an an instrumentality for the Retaliation Campaign, by having Rekor officers and employees reject the Plaintffs' efforts to exercise their Warrants, creating and publishing defamatory statements concerning the Plaintiffs, instituting bad faith litigation against the Plaintiffs, and funding and supporting these actions with the assets of the corporation. Accordingly, Defendants' conduct as fiduciaries of Rekor was in bad faith and done for an improper motive to punish Plaintiffs as opposed to benefit Rekor.

40. Berman was aided and abetted in the Retaliation Campaign by the members of the Board, including Harada, Hanlon, and Croxton, who, at various times and in various combinations, acquiesced to various aspects of the Retaliation Campaign and formally supported various aspects of the Retaliation Campaign. At minimum, Harada, Hanlon, and Croxton knew that Berman was engaging in the Retaliation Campaign for personal reasons and with an improper motive yet did not use their authority as members of the Board to stop him. There was no legitimate business

justification for Defendants' actions. Rather, Defendants' conduct as alleged herein was Motivated by the improper purpose of trying to cause Plaintiffs harm and to satisfy Berman' insatiable quest for revenge. Attached hereto as Exhibit 9 are Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories in the action *entitled Rekor Systems, Inc. v. Loughlin, et al.*, (S.D.N.Y., No. 19-cv-7767 (LJL)).

41. By acquiescing to Berman's Retaliation Campaign, Defendants demonstrated a lack of independence from Berman. Defendants are beholden to Berman based on their personal and professional relationships with him.

42. By email dated September 27, 2018, Mr. Rhulen, who was still President of Rekor, asked Ms. Harada about a legal opinion concerning his legal duties to Rekor shareholders and others because he was, as set forth in Ms. Harada's September 21, 2018 email, to be working solely at the Firestorm subsidiary level. No one responded to Mr. Rhulen's email. A copy of Mr. Rhulen's September 27, 2018 email to Ms. Harada is attached hereto as Exhibit 10.

43. Instead, in a Form 8-K, filed with the SEC on October 12, 2018, Rekor disclosed that Harry Rhulen had been removed as President of Rekor and appointed as an Executive Vice President of Firestorm.

44. Berman made the decision to remove Harry Rhulen as President of Rekor. This decision was not for performance-based reasons but for personal reasons. Berman was angry with Harry Rhulen for the Whistleblower Complaint so he decided to remove Rekor's President, regardless of the disruption it caused the company, to satisfy his personal quest for revenge.

45. Upon information and belief, Harada, together with all the other members of the Board, including Berman, discussed the removal of Harry Rhulen from his position as President

of Rekor at the time that the removal occurred and supported Berman's decision to demote Harry Rhulen.

46. In December 2018, each of the Plaintiffs resigned from their employment with Rekor and Firestorm. By that time, Berman had made their working conditions intolerable and Plaintiffs felt as though they had no choice but to resign. However, Plaintiffs did not want to abandon Rekor or their investment in it. Accordingly, given their history and understanding with Firestorm and its operations, Plaintiffs decided to enter into a consulting agreement with Firestorm so they could continue to contribute to Rekor's success without having to deal with the hostile work environment created by Berman and the Retaliation Campaign.

47. In December 2018, Firestorm and the Plaintiffs entered into an agreement whereby Suzy Loughlin and Jim Satterfield would provide certain personal services (the "Personal Services Agreement") under which they would perform services for clients of Firestorm and be compensated by Firestorm.

48. In January 2019, Plaintiffs established CrisisRisk LLC ("CrisisRisk"), which, among other things, was to serve as a vehicle through which Ms. Loughlin and Mr. Satterfield would provide services pursuant to the Personal Services Agreement.

49. Upon information and belief, when the Personal Services Agreement was entered into, Berman, or other senior executives at Rekor, or both, approved the entering into that agreement.

50. In January and February 2019, Firestorm requested that Suzy Loughlin and Jim Satterfield provide services to certain clients of Firestorm pursuant to the Personal Services Agreement.

51. Suzy Loughlin and Jim Satterfield provided the services as requested by Firestorm.

52. In January and February 2019, CrisisRisk sent invoices to Firestorm for the services provided by Suzy Loughlin and Jim Satterfield at the request of Firestorm.

53. After Firestorm received the benefit of Plaintiffs' labor, Berman directed Firestorm not to pay the CrisisRisk invoices for the services provided by Suzy Loughlin and Jim Satterfield. The decision not to pay the CrisisRisk invoices was motivated, in whole or in part, by Berman's animus toward Plaintiffs and as part of the Retaliation Campaign.

54. Upon information and belief, subsequent to December 2018, the Board decided to close Firestorm as a business.

55. Upon information and belief, in or about May 2019, Rekor terminated all franchise agreements between Firestorm and the Firestorm franchisees.

56. In July 2019, Jim Satterfield attempted to exercise his Warrants he owned in accordance with the Purchase Agreement. Copies of the instruments by which Mr. Satterfield attempted to exercise his Warrants in July 2019 are attached hereto as Exhibit 11.

57. Also in July 2019, Suzy Loughlin attempted to transfer her Warrants that she owned in accordance with the Purchase Agreement. Copies of the instruments reflecting Ms. Loughlin's attempt to transfer Warrants in July 2019 are attached hereto as Exhibit 12.

58. Jim Satterfield's exercise of his Warrants and Suzy Loughlin's attempted transfer of her Warrants complied with all applicable terms and conditions.

59. In July 2019, Berman, in consultation with Harada, Hanlon, Croxton, and others, decided that Rekor would refuse to honor Jim Satterfield's attempted exercise and Suzy Loughlin's attempted transfer of their Warrants. This decision was motivated, in whole or in part, by Berman's animus toward Plaintiffs and to continue the Retaliation Campaign.

60. Upon information and belief, Hen engaged in the process that resulted in Rekor's refusing to honor Jim Satterfield's attempted exercise and Suzy Loughlin's attempted transfer of their Warrants.  Hen knew or should have known that there was no legitimate, good faith basis to refuse to honor the Warrants and that the decision to do so was made in bad faith.

61. Upon information and belief, Harada, Hanlon, and Croxton supported Berman's decision to have Rekor refuse to honor Jim Satterfield's attempt to exercise his Warrants and Suzy Loughlin's attempt to transfer her Warrants. Harada, Hanlon, and Croxton knew, or should have known, that there was no legitimate good faith basis to refuse to honor Mr. Satterfield's and Ms. Loughlin's Warrants, and that the decision to do so was made in bad faith.

62. In July 2019, Rekor refused to honor Jim Satterfield's and Suzy Loughlin's Warrants.

63. In August 2020, each of the Plaintiffs attempted to exercise their Warrants. Attached hereto as Exhibit 13 are the instruments pursuant to which the Plaintiffs attempted to exercise their Warrants in August 2020.

64. The Plaintiffs' August 2020 attempt to exercise their Warrants complied with all applicable terms and conditions.

65. Rekor also failed to honor the August 2020 attempts by each plaintiff to exercise his or her Warrants.

66. Upon information and belief, after their election to the Board at the 2019 Annual Meeting, the Board, or members thereof, directed attorneys at the New York City office of Crowell & Moring LLP to commence a legal action against the Plaintiffs.

67. On August 19, 2019, Rekor commenced an action against the Plaintiffs entitled *Rekor Systems, Inc, v. Loughlin, et al*, (S.D.N.Y., No. 19-cv-7767 (LJL)) (the "Federal Action").

68. Upon information and belief, the Board, including Harada, Hanlon, and Croxton, approved the commencement of the Federal Action.

69. Upon information and belief, the Federal Action was commenced in bad faith and with an improper motive in order to further the Retaliation Campaign. This is evidenced by the fact that the complaint Rekor filed in the Federal Action initially included six counts. After Plaintiffs served a motion under Rule 11, Rekor voluntarily dismissed five of the six counts. A copy of Plaintiffs' Memorandum of Law in support of their Rule 11 motion is attached hereto as Exhibit 14.

70. In the Federal Action, Rekor alleged, among other things, that Rekor had been defrauded by the Plaintiffs herein with respect to the Acquisition pursuant to which Rekor acquired Firestorm.

71. In the Federal Action, Rekor repudiated its obligations under the Warrants that were issued to the Plaintiffs pursuant to the Purchase Agreement and sought the rescission of the Warrants. Plaintiffs attempted to bring claims against Harada, Hanlon, Croxton, Hen and Berman in the Federal Action alleging the claims set forth herein. However, Defendants herein moved to dismiss claiming that the New York Court could not exercise personal jurisdiction over them.

## COUNT ONE
### (Breach of Fiduciary Duty)

72. Plaintiffs repeat and reallege the allegations of each of the preceding paragraphs as if set forth in full herein.

73. As directors of Rekor, Harada, Hanlon, and Croxton owed fiduciary duties to Plaintiffs as a result of Plaintiffs' status as shareholders of Rekor. At all times material hereto, Plaintiffs were shareholders of Rekor.

74. As an officer and director of Rekor, and as a controlling shareholder of Rekor, Berman owed fiduciary duties to Plaintiffs as a result of Plaintiffs' status as shareholders of Rekor.

75. As an officer of Rekor, Hen owed fiduciary duties to Plaintiffs as a result of their status as shareholders of Rekor.

76. The actions taken in furtherance of the Retaliation Campaign, included, among other things, Rekor's refusal to honor Ms. Loughlin's and Mr. Satterfield's Warrants, Berman creating a hostile work environment, Rekor using its control over Firestorm to dishonor the Personal Services Agreement, and causing Rekor to initiate the Federal Action. These actions directly injured the Plaintiffs and improperly favored the interests of Berman, Nathan and McCarthy, the controlling shareholders, by preventing the active dilution of their ownership percentages by Plaintiffs' exercise of their Warrants.

77. Rekor's refusal to honor Ms. Loughlin's and Mr. Satterfield's Warrants and Rekor's repudiation of its obligations pursuant to all of the Warrants was done in furtherance of the Retaliation Campaign, with an improper motive, and in bad faith.

78. Harada, Hanlon, Croxton, Hen, and Berman breached their fiduciary duties owed to the Plaintiffs by using Rekor as the instrument of Berman's desire to enact revenge for the Whistleblower Complaint. Harada, Hanlon, Croxton, owe their board seats, and Hen owes his officer position, to Berman and are personally and professionally beholden to him. Harada, Hanlon, Croxton failed to exercise their authority as directors, and Hen failed to exercise his authority as an officer, for a legitimate business purpose and instead allowed Berman to engage in a personal vendetta against Plaintiff. Berman was also motivated by a self-interested desire to avoid his stock being diluted by the exercise of the Warrants.

79. Harada, Hanlon, Croxton, Hen and Berman acted in bad faith and with an improper motive. As a result, Plaintiffs have been damaged.

80. As a result of the foregoing, Plaintiffs are entitled to a judgment against Harada, Hanlon, Croxton, Hen, and Berman, jointly and severally, in an amount to be determined at trial, but not less than the difference in value between the highest listed market price for Rekor stock between July 25, 2019 and the date of judgment herein, and the price at which Defendants could have exercised their Warrants on that date, but not less than $2,546,046.87, together with interest thereon.

## COUNT TWO
### (Defamation-Libel)

81. Plaintiffs repeat and reallege the allegations of each of the preceding paragraphs as if set forth in full herein.

82. On August 14, 2019, Rekor filed a Form 10-Q with the Securities and Exchange Commission (the "10-Q").

83. Both Hen and Berman signed the 10-Q.

84. The 10-Q is publicly available on the Rekor website.

85. Upon information and belief, before, after, or concurrent with the 2019 Annual Meeting, the Rekor Audit Committee reviewed and approved the 10-Q and forwarded it to the entire Rekor Board for further review and approval. Upon information and belief, all Defendants reviewed and approved the 10-Q before it was filed with the SEC.

86. Upon information and belief, after the 10-Q was filed with the SEC, Berman, or other members of the Board and senior management of Rekor, or both, sent copies of the 10-Q to persons in New York State.

87. The 10-Q contains the following statement:

> On June 25, 2019, the we sent a letter to three former executives of the Company and Firestorm (the Firestorm Principals). The letter described the Company's position that, because the Firestorm Principals fraudulently induced the execution of the Membership Interest Purchase Agreement pursuant to which Firestorm was acquired by the Company, the entire Membership Interest Purchase Agreement and the transactions contemplated thereby, including the issuance of the warrants, are subject to rescission.

88.     The foregoing statement is of and concerning the Plaintiffs.

89.     At the time of the 10-Q, the Plaintiffs were former officers of Rekor and Firestorm, and, prior to the Acquisition, the Plaintiffs had been the majority owners of Firestorm and officers of Firestorm.

90.     Rekor defined Harry Rhulen, Suzanne Loughlin, and James Satterfield as the "Firestorm Principals" in its Form 10-K, filed with the SEC on April 11, 2019.

91.     The statement in the 10-Q that the Plaintiffs "fraudulently induced the execution of the Membership Interest Purchase Agreement" is false, and was made with actual malice in order to further the Retaliation Campaign.

92.     The statement in the 10-Q that the Plaintiffs "fraudulently induced the execution of the Membership Interest Purchase Agreement" disparages the Plaintiffs in their business or profession and is defamatory *per se*.

93.     The statement in the 10-Q was published negligently, or with malicious intent, in order to smear the Plaintiffs and to pressure Plaintiffs to acquiesce to Rekor's and the Board's determination to repudiate their obligations to Plaintiffs pursuant to the Warrants and the Notes, and to further the Retaliation Campaign.

94.     As a result of the foregoing, the Plaintiffs have been injured.

95. Upon information and belief, after the 2019 Annual Meeting, the Rekor Audit Committee, including Harada and Croxton, reviewed and approved the 10-Q and forwarded it to the Rekor Board for further review and approval.

96. Upon information and belief, prior to August 15, 2019, there was a meeting of the Rekor Board at which the Board, including Harada, Hanlon, and Croxton, reviewed and approved the 10-Q before it was filed with the SEC. (Plaintiffs believe that the minutes of the Rekor Board will show that the Board's review and approval of the 10-Q.)

97. Upon information and belief, both Hen and Berman reviewed and approved the 10-Q before they signed it and before it was filed with the SEC.

98. Plaintiffs seek the award of only nominal actual damages on this cause of action.

99. Plaintiffs seek punitive damages in the amount of $2,000,000.00.

100. Plaintiffs seek a judgment against Harada, Hanlon, Croxton, Hen, and Berman, jointly and severally, in an amount to be determined at trial, but not less than $2,000,000.00, together with interest thereon.

WHEREFORE, Plaintiffs Suzanne Loughlin, Harry Rhulen, and James Satterfield respectfully request the Court enter judgment as follows:

A. On the first cause of action, awarding Plaintiffs damages as against Harada, Hanlon, Croxton, Hen, and Berman, jointly and severally, in an amount to be determined at trial, but not less than $2,546,046.87, together with interest thereon;

B. On the second cause of action, awarding Plaintiffs nominal damages, together with punitive damages, all as against Harada, Hanlon, Croxton, Hen, and Berman, jointly and severally, in the amount of $2,000,000.00, together with interest thereon;

    C.      Awarding Plaintiffs the costs and expenses of this Action, including attorney's fees, and such other and further relief as may be just and proper.

                      **BERGER HARRIS LLP**

By:   /s/ David B. Anthony
       Brian M. Gottesman, Esq. (DE No. 4404)
       David B. Anthony, Esq. (DE No. 5452)
       Peter C. McGivney, Esq. (DE ID No. 5779)
       1105 N. Market Street, Ste 1100
       Wilmington, Delaware 19801
       (302) 655-1140  telephone
       (302) 655-1131  fax
       bgottesman@bergerharris.com
       danthony@bergerharris.com
       pmcgivney@bergerharris.com

*Attorneys for Plaintiff*

OF COUNSEL:

John J. D. McFerrin-Clancy, Esq. (*Pro Hac Vice Forthcoming*)
17 State Street, 40th Floor
New York, NY 10004
646.771.7377
jmc@mcferrin-clancy.com


And

Robert C. Boneberg, Esq. (*Pro Hac Vice Forthcoming*)
43 Madison Avenue
Maplewood, NJ 07040
bonebergesquire@gmail.com
973.886.6576

*Attorneys For Plaintiffs*


Dated: December 14, 2020