## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUZANNE LOUGHLIN, HARRY RHULEN, and JAMES SATTERFIELD, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 20-1055-LPS |
| | : | |
| CHRISTINE HARADA, DAVID HANLON, STEVEN D. CROXTON, EYAL HEN, and ROBERT A. BERMAN, | : | |
| | : | |
| | : | |
| Defendants. | : | |

Brian M. Gottesman, David B. Anthony, and Peter C. McGivney, BERGER HARRIS LLP, Wilmington, DE

      Attorneys for Plaintiffs

Paul D. Brown, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE

Keith M. Fleischman, Joshua D. Glatter, and June Park, FLEISCHMAN BONNER & ROCCO LLP, White Plains, NY

      Attorneys for Defendants

## MEMORANDUM OPINION

September 28, 2021
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Defendants Christine Harada ("Harada"), David Hanlon

("Hanlon"), Steven D. Croxton ("Croxton"), Eyal Hen ("Hen"), and Robert A. Berman's

("Berman" and, collectively, "Defendants") motion to dismiss Plaintiffs Suzanne Loughlin

("Loughlin"), Harry Rhulen ("Rhulen"), and James Satterfield's ("Satterfield" and, collectively,

"Plaintiffs") amended complaint (D.I. 12), filed pursuant to Federal Rule of Civil Procedure

12(b)(6). (D.I. 15)  The Court has reviewed the amended complaint and the parties' briefs. (D.I.

16, 20, 21)  For the reasons set forth below, the Court will deny the motion.

## I.    BACKGROUND

Defendants are directors and officers of Rekor Systems, Inc. ("Rekor"). (D.I. 12 ¶¶ 1, 6-

10)  Plaintiffs were the majority owners of two entities called Firestorm Solutions LLC and

Firestorm Franchising LLC (jointly, "Firestorm"). (*Id.* ¶ 29)  On January 25, 2017, Rekor

acquired Firestorm, and the acquisition was memorialized in a Membership Interest Purchase

Agreement ("Agreement"). (*Id.* ¶ 30)  Pursuant to the Agreement, Plaintiffs were each

compensated by a cash payment, Rekor shares, warrants for Rekor shares, and promissory notes.

(*Id.* ¶ 32)  Through the acquisition, Plaintiffs became shareholders of Rekor. (*Id.* ¶ 29)  Plaintiffs

also became employees of Rekor or Firestorm, a sub-subsidiary of Rekor. (*Id.* ¶¶ 33, 34)

In June 2018 and subsequent months, Plaintiff Rhulen made a whistleblower complaint

and various communications to Rekor's Governance Committee of the Board, chaired by

Defendant Harada, raising concerns about Defendant Berman's failure of leadership and lack of

skills to manage a public corporation. (*Id.* ¶¶ 35, 36; *see also id.* Ex. 7)  After receiving the

whistleblower complaint, the Governance Committee of the Board conducted an investigation

and issued sealed reports. (*Id.* ¶ 37)

In September 2018, Rhulen was "assigned responsibility to concentrate on Firestorm matters," unless Berman "specifically requests" otherwise. (*Id.*; *see also id.* Ex. 8)  On October 12, 2018, Rekor filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") disclosing that Rhulen had been removed as President of Rekor and appointed as an Executive Vice President of Firestorm. (*Id.* ¶ 43)

In December 2018, each of the Plaintiffs resigned from their positions at Rekor and Firestorm and entered into a consulting agreement with Firestorm. (*Id.* ¶ 46)  After Firestorm received the service provided by Plaintiffs Loughlin and Satterfield, Berman directed Firestorm not to pay for the service. (*Id.* ¶¶ 50-53)

On August 14, 2019, Rekor filed a Form 10-Q with the SEC, containing a statement regarding a letter sent to Plaintiffs describing Rekor's position that, because Plaintiffs had fraudulently induced Rekor's acquisition of Firestorm, the transaction and the issuance of warrants were subject to rescission. (*Id.* ¶¶ 82-88)

On August 19, 2019, Rekor's Board, including Defendants Harada, Hanlon, and Croxton, approved the commencement of a lawsuit against Plaintiffs, alleging that Rekor had been defrauded by Plaintiffs and seeking to be relieved of its obligations in connection with Plaintiffs' warrants for Rekor shares. (*Id.* ¶¶ 66-71)  After Plaintiffs served a Rule 11 motion, Rekor voluntarily dismissed five of six counts. (*Id.* ¶ 69)

From July 2019 to August 2020, Plaintiffs made multiple attempts to exercise or transfer their warrants for Rekor shares.  Berman, in consultation with and assisted by the other Defendants, decided that Rekor would refuse to honor Plaintiffs' warrants. (*Id.* ¶¶ 56-65)

On August 10, 2020, Plaintiffs filed this action against Defendants, asserting two counts: (1) breach of fiduciary duty; and (2) libel. (D.I. 1 ¶¶ 64-91)  On November 23, 2020, Defendants

filed a motion to dismiss (D.I. 10), to which Plaintiffs responded on December 14, 2020 by filing an amended complaint. (D.I. 12) On February 23, 2021, Defendants filed the pending motion to dismiss the amended complaint. (D.I. 15)

## II.   LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III.   DISCUSSION

### A.   The Breach Of Fiduciary Duty Claim

Under Delaware law,[1] "[a] claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010). "A breach of fiduciary duty occurs when a fiduciary commits an unfair, fraudulent, or wrongful act." *Id.* at 602.

In the amended complaint, Plaintiffs allege that Defendants breached their fiduciary duties by using their positions as directors and officers of Rekor to refuse to honor Plaintiffs' warrants as part of a purported campaign of retaliation. (*See* D.I. 20 at 10; *see also* D.I. 12 ¶¶ 72-80) Defendants contend that Plaintiffs' breach of fiduciary duty claim should be dismissed because (1) Plaintiffs were "owed no fiduciary duties as Rekor warrant holders," and (2) the amended complaint contains only "vaguely pleaded facts" and is insufficient to state a breach of fiduciary duty claim. (*See* D.I. 16 at 8-11) The Court finds that Defendants owed fiduciary duties to Plaintiffs and that the amended complaint has plausibly stated a breach of fiduciary duty claim.

---

[1] The Court understands that the parties agree that Delaware law should govern Plaintiffs' breach of fiduciary duty claim. Moreover, both Delaware and New York's choice-of-law rules determine that the state of incorporation – Delaware in this case (*see* D.I. 12 ¶ 13) – should govern the breach of fiduciary duty claim.

Defendants' position that they owed no fiduciary duties to Plaintiffs is premised on the view that under Delaware law "no fiduciary duties are owed to options holders." (*See id.* at 8; *see also Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 478 (Del. Ch. 2011) ("Until the warrant or option is exercised, the underlying shares are not issued, and the warrant or option holder's rights are entirely contractual."); *Simons v. Cogan*, 549 A.2d 300, 304 (Del. 1988) ("[A] mere expectancy interest does not create a fiduciary relationship.")) While no fiduciary duties are owed to future stockholders who have a "mere expectancy interest," Plaintiffs have alleged in the amended complaint, and the Court must accept as true for purposes of this motion, that they became ***shareholders*** of Rekor upon Rekor's acquisition of Firestorm. (*See* D.I. 12 ¶¶ 29, 74, 75). It is not disputed that directors and officers owe fiduciary duties to shareholders. *See, e.g.*, *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007).

Defendants nonetheless insist that no fiduciary duties were owed to Plaintiffs because the alleged fiduciary breach "resulted from blocking Plaintiffs' efforts to exercise or transfer their warrants" and the amended complaint "does not detail any injuries Plaintiffs incurred as Rekor shareholders." (D.I. 16 at 9) The Court disagrees.

Defendants have misconstrued Plaintiffs' claims. Plaintiffs are not suing Rekor for breaching contractual obligations by failing to honor their warrants, a claim which would be based solely on their status as warrant holders. Rather, Plaintiffs are suing the directors and officers of Rekor, as Rekor shareholders, for "using Rekor as the instrument of Berman's desire to enact revenge." (D.I. 12 ¶ 78) While the purported "retaliation campaign" resulted, in part, in Plaintiffs being unable to exercise warrants, the alleged fiduciary breaches go beyond merely "blocking Plaintiffs' efforts to exercise or transfer their warrants" (D.I. 16 at 9), as Defendants inaccurately state. The claims that Defendants leveraged their positions as corporate directors

and officers for personal interests, with no legitimate business purposes, are based on Plaintiffs'
capacity not as warrant holders, but as shareholders.

None of the cases cited by Defendants, including *Tooley v. Donaldson, Lufkin & Jenrette,
Inc.*, 845 A.2d 1031 (Del. 2004), and *In re Nine Sys. Corp. S'holders Litig.*, 2013 WL 771897
(Del. Ch. 2013), supports the proposition that a corporate fiduciary is relieved of obligations
owed to a shareholder on the basis that the shareholder's claim implicates a concurrent
contractual right the shareholder may (or may not) be able to exercise as a warrant holder.

Defendants also insist that the amended complaint fails to allege sufficient facts to
support a connection between Rhulen's whistleblower complaint, the alleged retaliation
campaign, and Rekor's decision to dishonor Plaintiff's warrants. (*See* D.I. 16 at 10-11) In fact,
however, the amended complaint alleges that, between June and September of 2018, Rhulen
made whistleblower complaints against Berman, raising concerns about Berman's failure of
leadership and lack of management skills. (D.I. 12 ¶¶ 35, 36; *see also id.* Ex. 7) Soon after the
investigation on his whistleblower complaints, Rhulen was demoted from President of Rekor to
Executive Vice President of Firestorm, a sub-subsidiary of Rekor, allegedly due to Berman's
personal quest for revenge. (*Id.* ¶¶ 43, 44) In early 2019, Berman also allegedly directed
Firestorm not to pay for the services provided by Loughlin and Satterfield, after Plaintiffs left
Rekor and entered into a consulting agreement with Firestorm. (*Id.* ¶¶ 46-53) In August 2019,
Rekor commenced a lawsuit against Plaintiffs, alleging that it was defrauded by Plaintiffs. The
lawsuit initially included six counts, but Rekor voluntarily dismissed five counts after Plaintiffs
served a Rule 11 motion. (*Id.* ¶¶ 67-71) When, between July 2019 and August 2020, Plaintiffs
attempted to exercise or transfer their warrants for Rekor shares, Berman, with the assistance of

other Defendants, decided that Rekor would refuse to honor these warrants, a decision allegedly motivated by Berman's animus toward Plaintiffs.  (*Id.* ¶¶ 56-65)

These allegations, taken in the light most favorable to Plaintiffs, sufficiently support an inference that Defendants used Rekor's corporate assets for Berman's personal agenda of retaliation, resulting in Plaintiffs' alleged injuries.  Hence, the Court will not dismiss Plaintiffs' breach of fiduciary duty claim for failure to state a claim.

### B.    The Defamation-Libel Claim

Under New York law,[2] to succeed on a defamation claim a plaintiff must show that "the defendant published a false statement, without privilege or authorization, to a third party, constituting fault as judged by, at minimum, a negligence standard, and it must either cause special harm or constitute defamation *per se*."  *Rodriguez v. Daily News, L.P.*, 142 A.D.3d 1062, 1063 (N.Y. App. Div. 2016).  A statement is defamatory *per se* when it tends to "injure another in his or her trade, business or profession."  *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992).

Plaintiffs' libel claim is premised on a statement published in a Form 10-Q that Rekor filed with the SEC on August 14, 2019.  (D.I. 12 ¶ 82)  The statement reads:

> On June 25, 2019, we sent a letter to three former executives of the Company and Firestorm (the Firestorm Principals).  The letter described the Company's position that, because the Firestorm

---

[2] The parties cite both New York and Delaware cases but do not specifically address the choice-of-law issue other than referencing that "Plaintiffs have claimed New York law governs their libel claims" filed in "parallel lawsuits."  (D.I. 16 at 12)  A federal court sitting in diversity applies the choice-of-law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In a case involving, as here, internet-published defamations (*see* D.I. 12 ¶ 84) ("The 10-Q is publicly available on the Rekor website."), Delaware's choice-of-law rules provide for application of the laws of the plaintiff's domicile.  *See Perlman v. Vox Media, Inc.*, 2020 WL 3474143, at *3 (Del. Super. Ct. June 24, 2020).  Here, Plaintiffs are domiciled in New York, Colorado, and Georgia.  (D.I. 12 ¶¶ 2-4)  Since the parties' briefs make no reference to Colorado or Georgia law, the Court will apply New York law.

> Principals fraudulently induced the execution of the Membership
> Interest Purchase Agreement pursuant to which Firestorm was
> acquired by the Company, the entire Membership Interest Purchase
> Agreement and the transactions contemplated thereby, including
> the issuance of the warrants, are subject to rescission.

(*Id.* ¶ 87)  In a Form 10-K filed with the SEC on April 11, 2019, Rekor defined Plaintiffs as the

"Firestorm Principals."  (*Id.* ¶ 90)

Plaintiffs allege that the statement that they "fraudulently induced the execution of the

Membership Interest Purchase Agreement" is false, published negligently or with malicious

intent, and disparages Plaintiffs in their business or profession.  (*Id.* ¶¶ 91-93)  Defendants

respond that Plaintiffs' libel claim should be dismissed because the 10-Q statement is: (1)

truthful; (2) a non-actionable opinion; and (3) protected by litigation privilege.  (*See* D.I. 16 at

13-19)  The Court concludes that Plaintiffs have adequately stated a libel claim.

Defendants first contend that they cannot be held liable for libel because the challenged

10-Q statement accurately summarized the content of Rekor's June 25, 2019 letter to Plaintiffs.

(*See id.* at 13, 16)  This argument fails.  Since Plaintiffs allege that the content of the 10-Q

statement is defamatory, the defense of truth does not refer to the accuracy of summarization, but

to the truthfulness of the allegedly defamatory statement itself.  *See Condit v. Dunne*, 317 F.

Supp. 2d 344, 364 (S.D.N.Y. 2004) (finding defendant not immune from slander for "literally

true" statements where defendant was retelling false and defamatory stories).  A person who

repeats another's defamatory statement is "not made immune from liability for defamation

merely because another person previously made the same demeaning claim."  *Enigma Software

Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016); *see also

Brian v. Richardson*, 660 N.E.2d 1126, 1131 (N.Y. 1995) ("[T]he fact that a particular

accusation originated with a different source does not automatically furnish a license for others

to repeat or publish it without regard to its accuracy or defamatory character."); *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980) (noting "black-letter rule that one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher").

Defendants next argue that the challenged 10-Q statement is immune because it reflected "subjective (but honest) opinion." (*See* D.I. 16 at 13-17) "An expression of pure opinion is not actionable." *Steinhilber v. Alphonse*, 501 N.E.2d 550, 552 (N.Y. 1986). A statement constitutes "pure opinion" if it "is accompanied by a recitation of the facts upon which it is based," or "if it does not imply that it is based upon undisclosed facts." *Id.* Whether a statement is a fact or an opinion is a question of law to be decided by the Court based on "what the average person hearing or reading the communication would take it to mean." *Davis v. Boeheim*, 22 N.E.3d 999, 1004-05 (N.Y. 2014) (internal citations omitted). Courts apply three factors in undertaking this fact-or-opinion analysis:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Id.* at 1005 (internal citations omitted).

Defendants focus on the third factor, contending that a reasonable reader would understand the assertion in the 10-Q that Plaintiffs committed fraudulent inducement as a "candid opinion," not as a fact. (*See* D.I. 16 at 15-16) Defendants also emphasize the context, asserting the challenged statement is non-actionable because it was made in compliance with the

9

disclosure requirements for a publicly-traded company. (*See id.* at 15-18)  The Court is not persuaded.

Defendants are not insulated from liability by packaging an otherwise defamatory factual statement into "the Company's position." *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) (holding that couching factual statement – "Jones is a liar" – in terms of opinion – "In my opinion Jones is a liar" – does not dispel statement's factual implications).  Additionally, neither the statement itself nor the context in which the statement was published – including that it was published as a mandatory disclosure in the 10-Q – would suggest to a reasonable reader that the assertion of fraudulent inducement was merely an expression of opinion and not an allegation of facts.[3]  The Court, instead, agrees with Plaintiffs that the challenged statement, at minimum, is an actionable "mixed" opinion, because a reasonable reader could take it to mean Rekor is stating that Plaintiffs committed fraudulent inducement or some undisclosed misconduct. (*See* D.I. 20 at 7; *see also Kasavana v. Vela,* 172 A.D.3d 1042, 1047 (N.Y. App. Div. 2019) (finding claim that defendant had "reason to believe" plaintiff engaged in criminal

_____

[3] Defendants' cited authority, *Brian v. Richardson*, 660 N.E.2d 1126 (N.Y. 1995), is readily distinguishable.  In *Brian*, the statements were published on the Op Ed page of a newspaper, "a forum traditionally reserved for the airing of ideas on matters of public concern," where the common expectation is that the publications "will represent the viewpoints of their authors and, as such, contain considerable hyperbole, speculation, diversified forms of expression and opinion." *Id.* at 1130.  Further, the "predominate tone" of the statements was "rife with rumor, speculation and seemingly tenuous inferences," indicating to the reasonable reader that it was "something less than serious, objective reportage." *Id.* at 1131.  These contextual circumstances are not present here.

Defendants' reliance on *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223 (S.D.N.Y. 2013), is also misplaced.  The court found the defendant's assertion of trademark ownership in 8-K filings without a good faith basis did not amount to defamation because "[t]he 8-K filings simply announced the existence of a legal dispute." *Id.* at 245.  Here, however, the challenged 10-Q statement expressly alleges that Plaintiffs committed fraud.

activities actionable because statement "implied that the defendant had knowledge of undisclosed facts that supported [defendant's] claim"))

Finally, Defendants contend that litigation privilege should extend to the 10-Q statement because, a few days after the filing of the 10-Q, Rekor commenced a civil action (the "Rekor litigation") against Plaintiffs, which contained the same fraud claims. (*See* D.I. 16 at 19)  Under New York law, statements to governmental authorities are accorded an absolute privilege when they are made as part of or preliminary to "a judicial or quasi-judicial proceeding." *Rosenberg v. Metlife, Inc.*, 866 N.E.2d 439, 443 (N.Y. 2007).  Although New York courts consider the SEC to be a quasi-judicial body, Defendants do not contend that the filing of a 10-Q constitutes "a part of or [is] preliminary to" an SEC proceeding.[4]  *See Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 383, 388 (S.D.N.Y. 2018) (finding statement in 10-Q and 10-K that plaintiff was terminated "for cause" not immune from liability under litigation privilege).  Nor does the privilege afforded to pre-litigation communications apply to the challenged 10-Q statement on the basis of the Rekor litigation.  The filing of a 10-Q is not "a preliminary or first step" in the commencement of a district court litigation proceeding; nor is it a part of attorney communications made "in order to reduce or avoid the need to actually commence litigation." *Rosenberg*, 866 N.E.2d at 444; *see also Front, Inc. v. Khalil*, 28 N.E.3d 15, 19 (N.Y. 2015).  The Court will not extend the litigation privilege, which has been confined by New York courts "to a

---

[4] Defendants' reliance on *Icahn v. Raynor*, 2011 WL 3250417 (N.Y. Sup. Ct. June 16, 2011), is misplaced.  The Form 13D at issue in that case "was filed ***because*** the 2010 litigation was commenced, and thus, it was incidental to that litigation and falls squarely within the protection of the Noerr-Pennington doctrine." *Nineteen Eighty-Nine, LLC v Icahn Enters. L.P.*, 99 A.D.3d 546, 547 (N.Y. App. Div. 2012).  There is no indication that the 10-Q in this case was filed "because" of the commencement of any SEC or judicial proceedings.

11

very few situations," to the challenged 10-Q statement. *See Park Knoll Assoc. v. Schmidt*, 451

N.E.2d 182, 185 (N.Y. 1983).[5]

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to dismiss.  (D.I. 15)

An appropriate order follows.

---

[5] Having found that litigation privilege does not apply to the challenged 10-Q statement, the Court need not reach the question of whether the privilege fails because the statement was made with malice.  (*See* D.I. 20 at 9)